IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AZIZ FORTUNE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LOUIS GIORLA ET AL. | : | NO.  11-615 |

## MEMORANDUM

**Padova, J.**                                                    **December 21, 2011**

*Pro se* inmate Aziz Fortune has brought this action pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated while he was incarcerated in a Philadelphia prison.  The Complaint asserts claims against Philadelphia Prison Commissioner Louis Giorla, Warden John Delaney, and Sergeant Knight.  Defendants have filed a motion for summary judgment.  For the following reasons, we grant the Motion in part and deny the Motion in part.

## I.      BACKGROUND

Since 1999, Plaintiff Aziz Fortune has intermittently been incarcerated in the Curran-Fromhold Correctional Facility ("CFCF") of the Philadelphia Prison System ("PPS").  (Powers Decl. ¶¶ 3, 7.)  The Complaint concerns the conditions of Plaintiff's confinement at CFCF beginning in January 2010 and an incident that took place on March 20, 2010.  (Id. ¶ 3; Pl.'s Resp. Br. Exs. A, B.)  On March 20, 2010, Plaintiff was waiting at the medical window to receive his medication from a CFCF nurse.  (8/4/11 Fortune Dep. ("Fortune Dep.") at 6.)  The nurse began arguing with other inmates and, mistakenly believing Plaintiff was a part of the argument, began yelling at and arguing with him as well.  (Id. at 7, 9.)  Sergeant Knight intervened and instructed Plaintiff to come into a nearby office with him.  (Id. at 9-10.)  Knight and Plaintiff went into the nearby office and Knight told Plaintiff to shut the door.  (Id. at 11.)  Knight then "smacked" Plaintiff in the mouth with his

1

right hand.  (Id.)  Two of Plaintiff's front teeth were knocked loose and one of them eventually fell out.  (Id. at 13-15.)

Beginning in January, 2010, while he was incarcerated at CFCF, Plaintiff lived intermittently with two other prisoners in a cell designed for only two inmates.  (Id. at 23-27.)  He also spent time in a cell with just one other inmate and in a multipurpose room with several other inmates.  (Id. at 24, 27.)  While he was housed in a two-man cell with two other inmates, Plaintiff lived on the floor right next to the toilet and felt "cramped."  (Id. at 27, 29.)  Unsanitary conditions caused Plaintiff's skin to break out in rashes.  (Id. at 27-29.)

The Complaint asserts one claim against Sergeant Knight for the assault ("the assault claim")[1] and one claim against Warden Delaney and Commissioner Giorla challenging the overcrowded conditions of Plaintiff's confinement ("the overcrowding claim").[2]  The Complaint did not indicate whether the claims were brought against Defendants in their individual or official capacities, or both. Defendants have collectively moved for summary judgment on both claims.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the

---

[1] Plaintiff acknowledged during his deposition that his assault claim was only directed at Sergeant Knight.  (Fortune Dep. at 5.)

[2] Plaintiff has not specified what rights he is alleging Defendants violated, or whether he was a pretrial detainee or had been convicted and sentenced at the time of the assault and overcrowding. If Plaintiff were a pretrial detainee, his claims would fall under the due process clause of the Fourteenth Amendment; if Plaintiff had been adjudicated guilty and punished, his claims would fall under the Eighth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 536 n. 16 (1979) (citations omitted).

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the case under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III.   DISCUSSION

Defendants have moved for summary judgment on both of Plaintiff's claims on the ground that he failed to exhaust his claims as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). Defendants also seek summary judgment on behalf of Giorla and Delaney on the grounds that they were not personally involved in the events giving rise to Plaintiff's overcrowding claim, and that there is no evidence that would support municipal liability as to that claim. Before we turn to these arguments, we must first determine whether the claims were brought against Defendants in their official or individual capacities, or both.

A.      Individual and Official Capacity

The Complaint does not specify whether Defendants are being sued in their individual or official capacities.  Bringing a suit against a defendant in his official capacity is "another way of pleading an action against an entity of which an officer is an agent.'"  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell v. Dep't of Social Servs. of New York City, 436 U.S. 658, 690 n.55 (1978)).  Consequently, an official capacity suit is treated as a suit against the governmental entity and damages are paid by the governmental entity.  Id. at 166; Hill v. Borough of Kutztown, 455 F.3d 225, 233 n.9 (3d Cir. 2006).  A governmental entity may not be held liable under § 1983 unless the entity's policy or custom caused plaintiff's injury.  Monell, 436 U.S. at 694.  In contrast, a suit brought against a defendant in his individual capacity seeks damages from the defendant's own assets for actions done by that defendant personally.  See Graham, 473 U.S. at 165-66.

We look to the Complaint and the "'course of the proceedings'" to determine in what capacity Plaintiff is suing Defendants.  Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990) (quoting Graham, 473 U.S. at 167 n.14).  We consider the following factors:  particularized allegations of personal involvement; from whom damages are sought; responses by defendants that reflect an understanding that their personal assets are at stake; and what immunity defenses are raised.  See Garden State Elec. Inspection Servs., Inc. v. Levin, 144 F. App'x 247, 251-52 (3d Cir. 2005) (citations omitted).

We look first to the assault claim.  The Complaint alleges that Sergeant Knight personally committed the assault.  (Compl. ¶ II.D.)  In addition, the Complaint seeks punitive damages against Sergeant Knight.  (Id. ¶ V.)  Punitive damages cannot be assessed against "municipal or state entities or municipal or state employees sued in their official capacity."  Bane v. City of Philadelphia, Civ.

4

A. No. 09-2798, 2009 WL 6614992, at *15 (E.D. Pa. June 18, 2010) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 261 (1981)).  Therefore, when a complaint seeks punitive damages, we construe it as being brought against a defendant in his individual capacity.  See Gregory v. Chehi, 843 F.2d 111, 119-120 (3d Cir. 1988).  Further, Defendants raised the affirmative defense of qualified immunity in their Answer.  (Answer at 5.)  This defense is only available to government officers sued  in their individual capacity.  See Melo, 912 F.2d at 636.  Accordingly, we conclude that Plaintiff has sued Sergeant Knight in his individual capacity.

We next turn to the overcrowding claim, which challenges the Philadelphia Prison System's placement of three men in cells designed to hold only two men.  Plaintiff used Giorla's and Delaney's official titles when naming them as Defendants, which indicates that he intended to sue them in their official capacities.  Pena v. Div. of Child & Family Servs., No. 08-1168, 2010 WL 3982321, at *5 (D.N.J. Oct. 8, 2010).  Furthermore, Plaintiff also appears to seek monetary damages from the City in connection with this claim.  During his deposition, he stated that "they" were giving money to other prisoners who brought overcrowding suits, and that "they" were making money from having so many prisoners.  (Fortune Dep. at 28.)  We understand Plaintiff's use of "they" to refer to the City of Philadelphia, rather than to Giorla or Delaney personally.  Moreover, Defendants have treated this claim as if it were brought against Defendants in their official capacities.  Furthermore, there is nothing in the record to suggest that Plaintiff intended to bring this claim against Giorla or Delaney in their individual capacities and the Complaint does not allege that either Giorla or Delaney was personally involved in the overcrowding.  "[I]n order to maintain a § 1983 claim against a government employee in his individual capacity, the individual 'must have personal involvement in the wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'"

5

Thrower v. Pennsylvania, Civ. A. No. 10-222, 2011 WL 4565774, at *3 (W.D. Pa. Sept. 29, 2011) (quoting Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)); see also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). Accordingly, we conclude that the overcrowding claim has been brought against Giorla and Delaney in their official capacities.

      B.    Exhaustion

Defendants argue that both of Plaintiff's claims must be dismissed because he failed to exhaust administrative remedies available to him at CFCF before filing this lawsuit. The PLRA states that, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). The Supreme Court has explained that "proper exhaustion" "'means using all the steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). In order to properly exhaust administrative remedies, a prisoner must therefore comply with the prison's grievance procedures and complete all levels of appeal within the grievance system before filing suit. Jones v. Bock, 549 U.S. 199, 218 (2007); Woodford, 548 U.S. at 90; see also Luckett v. DeRose, 355 F. App'x 582, 584 (3d Cir. 2009) (affirming dismissal of § 1983 claim brought by prisoner because the prisoner did not pursue all available appeals in the administrative process before filing his federal lawsuit). Failure to exhaust is an affirmative defense and the defendants bear the burden of proof. Jones, 549 U.S. at 216.

Under the PPS's grievance rules, a prisoner may file a grievance complaining of, *inter alia*, "an alleged violation of an inmate's civil, constitutional, or statutory rights" and "a condition existing within the PPS that creates unsafe or unsanitary living conditions." (PPS Policy 3.F.10 at 2.) The PPS's grievance rules provide for two levels of review. (Id. at 6-7.) Initially, a grievance is reviewed by the Deputy Warden for Administration, who makes a recommendation to the Warden. (Id. at 6.) If a prisoner is dissatisfied with the Warden's decision, he can seek review by the PPS Commissioner, whose decision is final. (Id. at 7.) If a prisoner does not receive a response to his grievance, he is entitled to move to the next level. (Id. at 3.) If a prisoner feels he has been denied access to the grievance process, he may forward his grievance directly to the PPS Commissioner. (Id. at 5.) The PPS keeps track of all grievances filed via the Lock & Track database. (Powers Dec. ¶ 16.)

1.      The Assault Claim

Defendants argue that Plaintiff never filed a grievance regarding his assault. They maintain that a search of the Lock & Track system failed to identify any grievances filed by Plaintiff. (See Defs.' Mot. Ex. F; Powers. Dep. ¶¶ 18-19.) They also point out that Plaintiff has failed to submit into evidence his carbon copy of any such grievance form. (See Powers Dep. ¶ 17.) Plaintiff, however, maintains that he filed a grievance regarding the assault. (Fortune Dep. at 17.) He also submitted into evidence two letters dated shortly after the incident, one to Warden Delaney and one to Commissioner Giorla, in which he states that he filed a grievance after he was assaulted by Sergeant Knight and asked why he had not received a response. (Pl.'s Resp. Br. Exs. A, B.)

Defendants further argue that, even if Plaintiff did file an initial grievance, he failed to exhaust because he did not seek review by the PPS Commissioner. Plaintiff admits that he did not

7

file a formal appeal because "[t]here wasn't an appeal avenue to take.  I cannot appeal a no response." (Compl. ¶ IV.E.)  However, as mentioned above, the record contains letters from Plaintiff to both Warden Delaney and Commissioner Giorla informing them of his grievance and stating that he never received a response.  (Pl.'s Resp. Br. Exs. A, B.)  The record on this Motion does not contain any PPS procedures regarding how an inmate is to advance his grievance to the next level when he receives no response, or how he is to submit his grievance directly to the Commissioner when he feels he is being denied access to the grievance process.  Consequently, we cannot conclude that Plaintiff's letter to Commissioner Giorla was insufficient to satisfy the requirement that he seek review by the Commissioner in order to exhaust his claim.  We conclude, based upon the evidence on the record, that there is a genuine issue of material fact regarding whether Plaintiff exhausted his claim against Sergeant Knight, and therefore Defendants' Motion for Summary Judgment is denied as to that claim.

### 2.    The Overcrowding Claim

Defendants also maintain that Plaintiff never filed a grievance regarding his overcrowding claim.  Plaintiff admits that he did not file a grievance about his overcrowded condition.  (Fortune Dep. at 31.)  Plaintiff's failure to exhaust thus bars his overcrowding claim.  See, e.g., Stewart v. Kelchner, 358 F. App'x 291, 297 (3d Cir. 2009) (affirming judgment against plaintiff for failure to exhaust an overcrowding claim, despite the failure of prison officials to adequately address past grievances); McErlean v. Merline, Civ. A. No. 07-5681, 2011 WL 540871, at *7-8 (D.N.J Feb. 8, 2011) (applying the exhaustion requirement to an overcrowding claim when there is no evidence that the grievance system was unavailable to address the prisoner's complaints).  But see Williams v. City of Philadelphia, 270 F.R.D. 208, 221-22 (E.D. Pa. 2010) (certifying a class action despite the failure

of some class members to exhaust).[3]  Accordingly, we conclude that Defendants Giorla and Delaney are entitled to the entry of judgment as a matter of law on Plaintiff's overcrowding claim and Defendants' Motion is granted as to that claim.[4]

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is denied with respect to the assault claim against Defendant Knight.  The Motion is granted with respect to the overcrowding claim.  Judgment is thereby entered in favor of Defendants Giorla and Delaney and against Plaintiff on the overcrowding claim.  An appropriate Order follows.

BY THE COURT:


/s/ John R. Padova
John R. Padova, J.

---

[3] Williams is inapposite to our case.  Williams was a class action which sought injunctive relief, likely in the nature of the vast remedies ordered in previous litigation involving the Philadelphia Prison System.  See Williams, 270 F.R.D. at 210-14.  The court did not require exhaustion by all class members because the record showed that the relief sought was beyond the scope of the grievance process.  Id. at 221-22.  In contrast, Plaintiff here seeks solely monetary damages and complains about conditions that could have been addressed by the grievance system, such as abuse by his cellmates and rashes.  (Fortune Dep. at 27, 29; Pl.'s Resp. Br. at 5-6.)

[4] Because we find in Defendants' favor on their exhaustion argument with respect to the overcrowding claim, we need not reach their argument that Plaintiff has failed to establish the requisite policy for Monell liability.